## SYME CRYER v. THE STATE.

1. MURDER. *Conspiracy. Joint responsibility. Instruction.*

   Where one of a sheriff's posse is killed in an attempt to make an arrest of two persons, on a trial of one of them for murder, an instruction as to his responsibility for the acts of the other not on trial is irrelevant, and should not be given, if it appear from all the evidence that such other did not kill the deceased.

2. HOMICIDE. *Preventing unlawful arrest. Grade of offense.*

   One who kills another, not in malice, but to prevent an unlawful arrest of himself by such other, is not guilty of murder.

3. SAME. *Instructions. Weight of evidence. Case.*

   Where one of a sheriff's posse is killed while attempting to arrest accused and another, and, on the trial of accused for murder, it appears that there was no warrant for the arrest, and the evidence leaves it doubtful whether any felony had been committed by any one, or even charged on reasonable grounds, and the supposed felony was not committed in the officer's presence, an instruction that if accused shot deceased to prevent being arrested he was guilty as charged, is erroneous. If it mean that the arrest was lawful under § 1375, code 1892, it is on the weight of evidence. If it mean that, notwithstanding the arrest was unlawful, the killing was murder, it is error, for such a homicide, if not in malice, is not murder.

FROM the circuit court of Pike county.

HON. W. T. CASSEDY, Judge.

Syme Cryer and Ephraim Cryer were jointly indicted for the murder of Phil Robinson. A severance was granted, and Syme Cryer was tried, found guilty and sentenced to life imprisonment in the penitentiary, and from this judgment appeals.

It appears from the evidence that, during a social gathering at the house of one Young, a difficulty arose between Young and Ephraim and Syme Cryer and others, and Young was severely cut. The deputy sheriff, who was at the county

seat about two miles distant, was sent for to arrest the two Cryers. He had no warrant, but was acting on the information of those present that the Cryers had inflicted the wound on Young. After arresting Syme Cryer, he deputized the deceased, Robinson, and others to assist him, and gave Robinson a gun, and placed Syme Cryer in his custody during his search for Ephraim Cryer. He found the latter near the gate, and, in seeking to arrest him, met with resistance. About this time, as the officer testifies, Syme Cryer called out to Ephraim for assistance, and the latter ceased to struggle, and started with the officer to the house, where Syme was in the custody of Robinson. But, instead of going on with the officer, Ephraim suddenly ran off in the dark, and, as he was running, was fired at three times by the deputy sheriff. That officer then turned his attention to Syme Cryer, and attempted to put fetters on him, when the latter resisted him, and, at the same time, Ephraim Cryer, who had come back unobserved, seized the gun in the hands of Phil Robinson, and a struggle ensued between them for possession of the gun. Meantime, Syme Cryer had seized the officer from behind, and was holding him, and the officer discharged his pistol at him over his shoulder. Thereupon, Syme Cryer released the officer, and, with Ephraim Cryer, fled from the scene of the difficulty. It was then discovered that Robinson had been shot and killed, the ball striking him in the back of his head. One witness, Brown, who was present and assisted the officer, testifies that Syme Cryer fired the shot that killed Robinson, and this is the only positive testimony on this point. There was no testimony that Ephraim Cryer fired any shot during the entire difficulty, and the testimony seems to show that no more than four shots were fired.

The first instruction, the giving of which the court holds was error, merely defined conspiracy, and declared the responsibility of conspirators for the acts of each other done in the prosecution of their common design, and instructed

the jury that if Ephraim and Syme Cryer combined and acted in concert to resist arrest, and, in the execution of this design Syme Cryer shot and killed Robinson, both were guilty of murder.

It is not deemed necessary to state the testimony with greater particularity. The foregoing statement, together with that contained in the opinion, will be sufficient for an understanding of the questions passed upon by the court.

*J. H. Price* and *J. B. Sternberger*, for appellant.

We submit the verdict is not warranted by the evidence. The instructions given for the state proceed on the theory of a conspiracy. The testimony to show a conspiracy wholly failed.

The instructions are erroneous, because they assume that the evidence has established that the arrest, or attempted arrest, was legal. *French* v. *Sale*, 63 Miss., 386; *Kearney* v. *State*, 68 *Ib.*, 233. The arrest was clearly illegal. The officer had no warrant. No offense had been committed in his presence, and there were no reasonable grounds to suspect that the Cryers had committed a felony. Code 1880, § 3026. If the killing was done to avoid an unlawful arrest, and there was no express malice, it could not be murder. Desty's Crim. L., § 129; 1 Am. & Eng. Enc. L., 587; 9 *Ib.*, 587.

*Frank Johnston*, attorney-general, for the state.

While the evidence is conflicting, it is sufficient to uphold the verdict of the jury.

The first instruction does not assume that there was a conspiracy between Syme and Ephraim Cryer. It merely defines a conspiracy, and leaves the question of fact to the jury.

It appears from the testimony that the Cryers were reasonably suspected of having committed a felony. The appellant had submitted to the arrest. Ephraim Cryer fled, but subsequently returned, and attempted to rescue his brother, and in this was aided by the latter. In doing this, both were engaged in a new felony, and their arrest was authorized.

COOPER, J., delivered the opinion of the court.

There is no suggestion in the evidence that Robinson was killed by Ephraim Cryer.    Indeed, it is shown by all the testimony that he was not.    So much of the first instruction for the state as relates to the responsibility of appellant for the act of Ephraim could only confuse the jury, and should not have been given.    It had no relevancy to the issue.

The second instruction for the state is fatally erroneous. By law "an officer or private person may arrest any person, without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence, or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge made upon reasonable cause of the commission of a felony by the party proposed to be arrested.    And, in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense or is arrested on pursuit."    Code 1892, § 1375.

The officer making the arrest on the occasion of the homicide confessedly had no warrant; the evidence leaves it more than doubtful that any felony had been committed by any one, or that appellant "*et al.*" had been charged, upon reasonable cause, with the commission of a felony; and, confessedly, the offense for which the arrest was sought to be made was not committed in the presence of the officer.

The second instruction for the state informed the jury "that, if you believe from the evidence in this case, that the defendant shot and killed deceased at a time when deceased and others were trying to arrest defendant *et al.*, and that he, defendant, shot and killed him in order to prevent said arrest, the defendant is guilty as charged, and the jury should so find."

This instruction either tells the jury that the arrest sought

to be made was a lawful arrest, and was therefore erroneous because upon the weight of evidence (Code, § 732) or instructed the jury that, if one unlawfully sought to be arrested resists, and kills the party seeking to arrest him, *to prevent such arrest*, and not in malice, he is guilty of murder. This is not the law, for the killing under such circumstances would be manslaughter, and not murder. Wharton on Homicide, §§ 225–271.

*Judgment reversed, and a new trial awarded.*