KIRK *v.* STATE.*

(En Banc. June 11, 1928.)

[117 So. 523. No. 27259.]

226

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 540, n. 59; Homicide, 29CJ, p. 1094, n. 29; Killing of arresting officer making lawful arrest held to be murder, see annotation in 66 L. R. A. 354; L. R. A. 1918D, 982; 13 R. C. L. 866; 3 R. C. L. Supp. 95.

*D. B. Cooley,* for appellant.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

ETHRIDGE, J. The appellant, Green Kirk, was tried and convicted in the circuit court of Simpson county, on a charge of murder, and sentenced to death, from which he prosecutes an appeal to this court.

The shooting took place at the house of a negro man named Esther Jones. The deceased, S. E. Nunnery, a deputy sheriff, in company with two or three other men, went to Jones' house to look and search for the appellant. One of the party searching was stationed outside of the house, while Nunnery and the others went into the house to make a search for the appellant. Just before the search was finished, the appellant approached Jones' house from the outside, and was halted by the deputy stationed there, and ordered to throw up his hands, which appellant did, holding a pistol in upraised right hand.

Nunnery and the other deputies in the meantime had made a thorough search of the house, and appeared on the back porch. Nunnery and another deputy threw flashlights upon the appellant while he was standing with his hands upraised, holding the pistol in one of them, according to the state's evidence. Nunnery approached the appellant, ordering him to drop his pistol. As appellant lowered his hands, he fired the pistol, striking Nunnery, who cried out that he was shot. Whereupon a general shooting took place, in which all the parties took part, except Jones. The appellant escaped from the scene of the shooting, but was wounded. He fired about six shots, using all the cartridges in his pistol. Within two days afterwards Nunnery died.

It appears from the state's evidence that Nunnery, the deputy sheriff, had asked the other men to go with him to search for the appellant, stating that he had a charge against the appellant, who was fleeing from the officers of the town of Magee. This was on the same evening the shooting took place. Nunnery's statement was admitted in evidence without objection.

The appellant testified in his own behalf, and stated that on the evening in question he was ordered to throw up his hands, and did so, but that the parties fired upon him while he had his hands up; that he did not have a pistol in his hand at the time, but, after the shooting commenced, he drew his pistol and fired, shooting as he retreated. He further testified that he had fled from arrest at Magee.

On cross-examination he was asked and answered questions as follows:

"Q. Who was it shot you? A. I don't know, sir.

"Q. What were those fellows doing there after you that night? A. I don't know, sir.

"Q. Didn't you know it was the officers after you to arrest you? A. When they told me to throw up my hands I thought so.

"Q. You knew it when you were told to throw up your hands? A. Yes, sir."

The appellant also testified that he was shot during the general shooting fray, and that he was arrested the following day, and that he used up all of his cartridges at the time.

The shooting occurred about the 29th day of January, 1928, after dark. . The appellant was indicted at the March term of court following, and, being unable to employ counsel for his defense, the court appointed two attorneys to defend him, who did so, but are not prosecuting this appeal. The appellant, on appeal, is represented by counsel from another county, who contends that he was tried practically without due process of law; that, while the trial was legal in form, it was not so in substance. Counsel also contends that the officer had no warrant for appellant's arrest, and that the state failed to prove that the appellant had committed a felony authorizing his arrest without a warrant; that, if the killing occurred under this circumstance, it was a killing in resisting unlawful arrest, and not in malice; and that, under such circumstances, the crime for which he should be convicted is manslaughter instead of murder, citing *Cryer* v. *State*, 71 Miss. 467, 14 So. 261, 42 Am. St. Rep. 473.

The record does not show specifically whether or not the officers had a warrant, and it does not appear for what offense the officers were making the arrest. The record does show, however, as is shown above, that the deputy sheriff, Nunnery, had a charge against the appellant.

It appears from the appellant's testimony that he knew that there was a charge against him, and that he had reason to believe, and did believe, that the parties seeking to arrest him were officers of the law. Under this state of facts, we do not think the case of *Cryer* v. *State*, *supra*, is applicable. There is a conflict between appel-

lant's testimony and that of the other persons there as to what transpired at the scene of the shooting, and we must presume that the officer was acting in conformity to law in making the arrest in the absence of a showing to the contrary. We are satisfied from the evidence, as was the jury, that the appellant knew that the parties were seeking his arrest, and that he shot the first shot in order to avoid being arrested at that time. Killing with a deadly weapon is presumed to be malicious, in the absence of a disclosure of the full facts and circumstances; and, from a careful consideration of the record before us, we think the appellant was rightfully convicted.

The judgment of the court below will therefore be affirmed, and Friday, July 13, 1928, is fixed for the date of execution.

*Affirmed.*